**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | CR. NO. | 1:CR-01-193 |
| | : | | 1:CR-05-006 |
| | : | (RAMBO J.) | 1:CR-05-203 |
| | : | | 1:CR-05-228 |
| | : | | 1:CR-05-232 |
| | : | | 1:CR-05-252 |
| | : | | 1:CR-05-253 |
| vs. | : | | 1:CR-05-256 |
| | : | | 1:CR-05-259 |
| | : | | 1:CR-05-284 |
| | : | | 1:CR-05-285 |
| | : | | 1:CR-05-287 |
| | : | | 1:CR-05-288 |
| | : | | 1:CR-05-294 |
| JOHN EVAN MIZIC | : | | 1:CR-05-296 |
| | : | | 1:CR-05-305 |
| | : | | 1:CR-05-306 |
| | : | | 1:CR-05-324 |
| | : | | 1:CR-05-367 |
| | : | | 1:CR-05-440 |
| | : | | 1:CR-05-456 |

## GOVERNMENT'S SENTENCING MEMORANDUM

AND NOW, the United States of America, by its undersigned counsel, submits the following Sentencing Memorandum:

**I.    STATEMENT OF FACTS AND OF THE CASE**

The current prosecution of John Mizic represents the latest chapter in an on-going criminal odyssey which has spanned four decades. During these 37 years of crime, Mizic has been convicted on more than twenty occasions of criminal offenses involving burglary, fraud, forgery, identity theft, escape, drug possession and deceit. PSR paragraphs 125-150. He has repeatedly violated parole and supervised release to commit these crimes. He has

escaped from federal custody on numerous occasions to commit these crimes. Mizic's crimes have resulted in hundreds of thousands of dollars in financial losses, and have victimized hundreds of individuals over the years. As a result of this relentless pattern of crime, Mizic has now amassed a Criminal History score of 21, a score which placed him far beyond the threshold for a Criminal History Category of VI, the highest criminal history category prescribed by the Federal Sentencing Guidelines.

Mizic's latest episode of crime began in May 2001 when Mizic escaped from federal custody. After escaping Mizic enlisted his family to help him in a nomadic criminal existence. With the help of his brother, and the assistance of his wife and their three children, Mizic became a fugitive for three years.

Having enlisted his own family to aid him in his flight, Mizic then orchestrated wide-ranging effort by the entire family to collectively conceal him. Acting at Mizic's direction, the defendant's wife, brother, two teenage step-sons, and step-daughter, assumed false identities, and helped Mizic cloak his fugitive identity from law enforcement.

This period of flight, concealment and deception necessarily involved all of the Mizic family, who collectively had to present false pretenses to the world in order to enable Mizic to flee justice. Moreover, this collective flight was far-reaching and extensive, enabling Mizic to elude arrest for more than three

years. Indeed, during the course of this family's fugitive years, according to Mizic's step-son the family enjoyed an extended holiday atmosphere, traveling from coast-to-coast, sightseeing throughout the United States, and even traveling to Disney World.

With his identity cloaked by the collective lies of his family, Mizic indulged in countless identity thefts and frauds to finance this fugitive lifestyle, perpetrating numerous frauds in dozens of states. These frauds enabled Mizic to obtain hundreds of thousands of dollars which he used to finance the family's deceptive fugitive existence. Mizic's familiy, in turn, cast a blind eye upon the fact that Mizic–a fugitive felon and fraud without any employment–was routinely able to generate large quantities of cash as the family fled across the nation.

Thus, for three years Mizic, and his family lived two lies, lies that were inextricably intertwined. First, Mizic directed his family in a pattern of deceit designed to conceal him as a fugitive. Mizic then sustained his fugitive family through countless serial frauds which he committed across the United States. Each lie sustained the other deception, and each deception was sustained by the other lie.

On May 20, 2004, Mizic's nomadic, criminal lifestyle came to an end when he was arrested by marshals in Independence, Missouri. Incident to that arrest, marshals seized from Mizic and his family graphic evidence of these frauds, including multiple false

identifications, caches of fraudulent documents and checks, fake weapons and cash.

Following his arrest and conviction in Missouri, Mizic returned to Pennsylvania in 2005, where this criminal lifestyle had begun some four years earlier. In Pennsylvania Mizic and the Government reached a global plea agreement designed to embrace the totality of these crimes.

Under the terms of this plea agreement, the Government and Mizic stipulated to a binding sentence under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure of 140 months imprisonment. Mizic also agreed to cooperate with authorities in the investigation of these and other crimes, with the understanding that the information which he provided to authorities could not be used to enhance his federal sentencing guidelines. Furthermore, the Government agreed that, if the defendant provided substantial assistance to law enforcement, the United States would agree to a sentencing departure from this stipulated sentence and would, at a minimum, recommend that the aggregate sentence for Mizic on all offenses, and any prison back time owed due to his escape, total no more than 140 months.

The parties entered into this binding plea agreement, which was accepted by the Court, as a fair way of resolving frauds which were staggering in their scope and dimension. Indeed, at the time of the initial pleas in this case, it was estimated that Mizic's

crimes may have entailed dozens of states, more than 250 victims and losses of as much as $2,500,000.

Pursuant to the terms of this binding plea agreement, some twenty districts transferred charges to Pennsylvania for plea and sentencing. Mizic entered binding guilty pleas to these charges, and awaits sentencing upon those pleas.

In preparation for this sentencing a comprehensive pre-sentence report was prepared. That report made findings regarding the scope and nature of Mizic's crimes, findings which aptly illustrated the fairness of the stipulated sentence agreed to by the parties at the outset of these proceedings. Indeed, after assessing the financial dimension of these crimes, the number of victims affected by Mizic's crimes, the sophistication of those crimes, the use of false identifications in the crimes, the manner in which Mizic moved to elude detection, and the way in which Mizic utilized his own family and children to mask his fugitive status, the report concluded that the stipulated 140 month sentence fell squarely within the advisory guidelines sentencing range of 120-150 months.

As these cases now proceed to sentencing Mizic has filed a sentencing memorandum. In this memorandum Mizic accepts, as he must, the stipulated sentence of 140 months, but argues that the probation office erred in determining that this stipulated sentence fell within the advisory guidelines range prescribed for these far-

reaching crimes. Mizic also urges the Court to depart dramatically below any Government departure recommendation when sentencing this offender.

For the reasons set forth below, the Government submits:

**First**, that Mizic is subject to the binding sentence agreed to by the parties of 140 months, subject only to the Government's departure request;

**Second**, that this binding 140 month sentence aptly captured the gravity of these crimes, is reasonable and is consistent with the advisory guideline; and

**Finally**, that while Mizic's cooperation warrants a modest departure from these guidelines, consistent with the terms of the plea agreement, the Government recommends that Mizic receive an aggregate sentence of 140 months for these offenses, for his related Missouri conviction and for his prior prison back time.

## II.  <u>DISCUSSION</u>

### <u>A. Mizic is Bound by the Stipulated Sentence Agreed to in This Case</u>

At the outset, the Government notes that this case entails a binding plea agreement which involved a stipulated 140 month jail term. Thus, absent a departure request by the United States Mizic and the Court have agreed to impose a sentence of 140 months imprisonment here.

Such plea agreements are specifically authorised under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and neither

6

Mizic, his counsel, nor the Court have identified any reason why this binding plea agreement, which was knowingly and intelligently entered into by this defendant, and was accepted by the Court, should not guide the Court at sentencing, subject only to the Government's departure request.

## B. That Stipulated Sentence Is Fair, Reasonable and Consistent with the Sentencing Guidelines.

Moreover, a consideration of the facts of this case reveals that this stipulated sentence is fair, reasonable and entirely consistent with the federal sentencing guidelines. Indeed, the pre-sentence report in this matter correctly concludes that the stipulated sentence in this case of 140 months imprisonment falls squarely within the guidelines imprisonment range for these crimes of 120-150 months.

While Mizic continues to adhere to the stipulated sentence which he agreed to serve, as a matter of litigation strategy Mizic now attacks the advisory guidelines range in this case, arguing that this range vastly overstates the scope of his criminality. Mizic's claims in this regard warrant only brief consideration by the Court.

At the outset, Mizic complains that the very conservative loss calculation set forth in the pre-sentence report is improper because it violates the plea agreement by calculating loss based upon the cooperation provided by Mizic in March 2005. Mizic's claim

of a breach of this agreement by the Government is based upon the inclusion in the loss calculation in this case of losses from a single district, the Eastern District of Missouri. While Mizic implies that this loss was based upon his cooperation, he acknowledges that the FBI had conclusively proven that Mizic was the man who committed these frauds by March 2004, a full year before Mizic began cooperating with authorities. Mizic Sentencing memorandum at 5.

The Government takes very seriously Mizic's accusation of a breach of this plea agreement, but notes that the discovery provided to Mizic absolutely refutes this claim. That discovery shows beyond any doubt that in 2003 Mizic was identified through bank surveillance photos as the man who stole the identity of an innocent person and committed serial frauds in Eastern Missouri. That discovery further shows that, in addition to the bank surveillance photos, the Government had conclusively tied Mizic to these crimes through his fingerprints by March 2004, two months before Mizic's arrest and a full year prior to his cooperation. This proof demonstrates that Mizic's assertion that inclusion of this loss is somehow based on his cooperation is simply wrong, and should be summarily rejected by the Court.

Similarly, Mizic argues that the pre-sentence report errs in alleging that the Government identified more than 10 victims in this case prior to his cooperation. Once again, the United States

is prepared to show that, in the course of the three year manhunt for Mizic, federal authorities and their state counterparts documented numerous criminal episodes involving identity theft and fraud by Mizic. These episodes entailed multiple victims, far in excess of the ten victims found in the pre-sentence report. Moreover, the fact that this crime involved multiple victims was graphically confirmed by physical evidence seized from Mizic at the time of his arrest in Missouri and admissions made by Mizic in 2004 when he was arrested. All of this evidence and these admissions pre-dated Mizic's federal guilty plea and cooperation. Taken together this proof amply illustrates that Mizic's crimes involved more than 10 victims.

Finally, Mizic's sentencing memorandum complains that the pre-sentence report errs in concluding that Mizic organized criminal activity which involved multiple participants, was far reaching and entailed use of minors. In this regard Mizic apparently concedes that he fled with his entire family, which included his wife, two teen-aged step-sons, and a minor step-daughter. Mizic also apparently acknowledges that he was assisted in this flight by his brother, who along with Mizic's wife, was convicted of aiding this fugitive.

Mizic further seems to concede that he and his family engaged in a far-reaching transcontinental odyssey while he was a fugitive, an odyssey that was completely financed through his frauds and

9

involved vacation trips to both coasts, Mount Rushmore, and Disney World, all of which were funded by fraud.

Mizic also appears to concede that his entire family necessarily participated in some deception to help hide him by assuming false identities during this extended flight. Finally, Mizic concedes, as he must, that the entire family enjoyed the benefits of his frauds, which funded their fugitive lifestyle, while promoting that fugitive status through their deceptions. While conceding all of this Mizic seeks to avoid the sentencing guidelines enhancements which inevitably flow from these facts, by arguing that his flight was separate from his frauds, and by seeking to compartmentalize his crimes.

This attempt to compartmentalize these crimes fails for two reasons. First, factually the two crimes are inextricably linked together. Mizic's frauds funded his fugitive status and Mizic's fugitivity enable him to commmit these frauds. By aiding Mizic at Mizic's direction while he was a fugitive, Mizic's entire family enabled him to commit these frauds, and enjoyed the financial benefits of a fugitive lifestyle financed through fraud.

Moreover, Mizic's efforts to narrowly compartmentalize these crimes is flatly inconsistent with the basic legal concept of relevant conduct which guides sentencing guidelines calculations. That concept, embodied in Section 1B1.3 of the Sentencing Guidelines holds Mizic accountable for all acts committed, aided,

10

abetted, commanded, induced and procured, by Mizic, as well as for all reasonably foreseeable acts resulting from joint criminal conduct.

In short, the facts and the concept of relevant conduct which guides the analysis of those facts, are fatal to Mizic's claims that he did not oversee a criminal activity which was extensive and involved his entire family, including his minor children. John Mizic elected to take this family with him when he became a fugitive. He then relied upon the family to assist him as a fugitive, a three year course of conduct that inevitably required deceit on the part of Mizic's brother, wife and children. Mizic, in turn, financed the family's fugitive lives through fraud, a course of conduct that was entirely foreseeable when these crimes began. Therefore, Mizic's efforts to avoid the legal consequences of this conduct through a narrow, parsing compartmentalization of his crimes should be rejected by this Court.

Moreover, a consideration of the statutory sentencing factors which guide this Court underscore the reasonableness of this stipulated sentence. Section 3553(a) of Title 18, United States Code, prescribes the statutory factors that a court should consider when sentencing a criminal offender. Those factors, which define a fair and just criminal sentence, include the following:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed-

11

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner....

In determining whether a specific sentence is reasonable when viewed in light of Section 3553's statutory criteria, Courts are cautioned to carefully consider the advisory guidelines range prescribed by the Sentencing Guidelines. See United States v. Booker, 125 S.Ct. 738 (2005). Thus, while a sentence within the guidelines imprisonment range is not per se reasonable, it is well-settled that: "A sentence that falls within the guidelines range is more likely to be reasonable than one outside the guidelines range"; United States v. Cooper, 437 F.3d 324, 332 (3d Cir.2006), and the defendant carries the burden of proving the reasonableness of a downward sentencing departure. Id.

When these benchmarks of fairness in sentencing are considered and applied to this case it is apparent that 140 month stipulated sentence is a fair and reasonable outcome here.

At the outset, a consideration of Section 3553(a)'s first essential sentencing factor–the nature of the offense and characteristics of the offender–weighs heavily in favor a

12

significant sentence in this case. Indeed, this offense entails several elements which cry out for a significant term of imprisonment. These crimes involved serial frauds, by a hardened criminal recidivist and escapee who victimized dozens of people and institutions across the United States to finance a fugitive lifestyle for three years. Further, it is clear beyond any serious dispute that this offense represents the latest instance of crime by a repeat offender who has amply demonstrated a shocking capacity for recidivism.

This constellation of aggravating circumstances should be fully considered by the Court in passing sentence in this matter, and underscore the reasonableness of the stipulated sentence. Therefore, Section 3553's first statutory factor--the nature of both the offender and the offense conduct in this case–strongly militates in favor of a significant sentence.

Further, when one considers Section 3553's admonition that a fair sentence also reflects the seriousness of the offense, provides just punishment and promotes respect for the law, it becomes apparent that justice calls for a significant sentence for this career offender. This defendant has engaged in repeated crimes over a span of years involving escape, flight, and multiple deceits. In addition, a significant sentence is required to provide adequate deterrence in this case. Mizic's multiple criminal convictions over the past four decades have shown that this

offender has been completed undeterred by past encounters with law enforcement. Thus, the critical law enforcement goal of deterrence is promoted by a significant sentence.

Finally, a significant sentence ensures public safety by delaying the release of this offender. Therefore, if the court is to achieve that cardinal object of sentencing–protection of the public–it must ensure a substantial sentence for this latest episode of crime by a relentless criminal recidivist.

While all of these considerations fully justify and support the stipulated sentence in this case, the Government has been informed by postal authorities that Mizic's cooperation warrants some sentencing reduction. Therefore, the consistent with the terms of the plea agreement, the Government recommends that the Court depart below this stipulated sentence. Specifically, the United States recommends that the aggregate sentence for Mizic on all offenses, and any prison back time owed due to his escape, should total 140 months. The scope and nature of this cooperation warranting a sentencing reduction are detailed below.

**C. Mizic's Cooperation Warrants an Aggregate 140 Month Sentence on all offenses, and any prison back time owed due to his escape.**

John Mizic's cooperation has been aptly characterized by his counsel in the defense sentencing memorandum. Following his plea Mizic submitted to extensive, detailed de-briefings. In these de-briefings Mizic provided a large volume of information, much of

14

which was was independently corroborated. This information enabled the Government to fully identify the economic scope of these crimes, and locate victims.

Furthermore, Mizic's cooepration provided useful criminal intelligence regarding both others engaged in similar fraud, as well as others engaged in document fraud. That criminal intelligence was deemed credible and useful, and has been forwarded to other law enforcement agencies, but has not led to any other prosecutions at this time.

Finally, Mizic has provided local authorities with information relating to other matters, which are described in the defense sentencing memorandum. Local authorities are continuing to look into those other matters.

In determining whether a sentence reduction is appropriate, the Court may consider a number of factors specified in Section 5K1.1 of the Sentencing Guidelines including the following: 1) the significance and usefulness of the defendant's assistance; 2) the truthfulness, completeness, and reliability of the defendant's information; 3) the nature and extent of the defendant's assistance; 4) any injury suffered or danger or risk of injury to the defendant or others as a result of the defendant's assistance; and 5) the timeliness of the defendant's cooperation. With respect to these factors, in United States v. Torres, 251 F.3d.138 (3rd. Cir. May 22, 2001) the United States Court of Appeals instructed this Court to

15

conduct a qualitative case-by-case analysis of Section 5K1.1's five enumerated factors, and any other factors the Court deems relevant, in making an assessment regarding the nature and scope of any sentencing departure. The Court of Appeals went on to state that the District Court should make specific findings regarding each of these factors and conduct an individualized examination of the defendant's assistance.

As an aid to the Court in conducting this individualized assessment required by law, the United States proffers the following with respect to the relevant factors under Section 5K1.1:

--Nature of the Cooperation: The nature of the defendant's cooperation consisted of engaging in lengthy interviews and providing information regarding past wrongdoing by other individuals, as well as defining the scope of these crimes;

--Significance of the Cooperation: The defendant's information was regarded as useful criminal intelligence which has been referred to other authorities and may contribute to the investigation and prosecution of others;

--Reliability of the Information Provided: The information provided by the defendant is believed to be truthful and accurate;

-- Danger to the Defendant: While all cooperation with law enforcement entails some potential risks, the government is unaware of any specific articulable danger to this defendant as a result of his cooperation; and

16

-- Timeliness of Cooperation: This defendant cooperated promptly.

In this case, it is submitted that the defendant's cooperation, as described above, constitutes substantial assistance warranting a sentencing departure in accordance with the Sentencing Guidelines, since a number of these factors weigh in favor of granting a sentencing departure. Specifically, consistent with the plea agreement, the Government recommends that the aggregate sentence for Mizic on all offenses, and any prison back time owed due to his escape, should total 140 months. [1]

## CONCLUSION

The stark reality is that John Mizic is a career criminal. A consideration of Section 3553's benchmark standards for sentencing confirms that the aggregate 140 month jail term recommended by the Government here, which would entail 107 months of additional jail

---

[1]
The United States understands that the defendant has been in continuous custody for the past 33 months, since his May 20, 2004 arrest. Of that time, approximately 11 months constituted back-time owed by Mizic, and an additional 22 months are apparently credited against Mizic's 41 month sentence in the Western District of Missouri. If the Court accepted the Government's recommendation and agreed to impose an aggregate 140 month jail term on this defendant, it could do so by sentencing Mizic to an additional jail terms of 107 month, or less, on each of the current constellation of federal charges pending against him, while running those 107 month terms concurrently with one another and with the remainder of the sentence currently being served by Mizic from the Western District of Missouri. Such a sentence would yield an aggregate punishment of 140 months, consisting of the 33 months already served by Mizic, plus the 107 months of additional jail time imposed by this Court.

time, is a fair, proper and indeed lenient sentence in this case. This sentence recognizes both the gravity of this offense, and the extensive criminal career of this defendant, while acknowledging the defendant's cooperation. This sentence also meets the essential goals of the legal system. It acknowledges the gravity of the crime; promotes respect for the law; provides essential deterrence; and protects the public by incarcerating a repeat offender.

Since this sentence meets all of the goals defined by Section 3553 it should be imposed by this Court. Accordingly, for the foregoing reasons, consistent with the plea agreement, the Government recommends that the aggregate sentence for Mizic on all offenses, and any prison back time owed due to his escape, should total 140 months.

                              Respectfully submitted

                              THOMAS A. MARINO
                              UNITED STATES ATTORNEY

                    BY:  S/MARTIN C. CARLSON
                              MARTIN C. CARLSON
                              Assistant U.S. Attorney
                              228 Walnut Street, Suite 220
                              Harrisburg, Pa. 17108
                              Phone: 717-221-4482
                              Fax:   717-221-4582
                              Martin.Carlson@USDOJ.gov
                              PA Bar #33396

Dated: February 13, 2007

18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
UNITED STATES OF AMERICA    :  CR. NO.    1:CR-01-193
                            :             1:CR-05-006
                            :  (RAMBO J.)1:CR-05-203
                            :             1:CR-05-228
                            :             1:CR-05-232
                            :             1:CR-05-252
                            :             1:CR-05-253
            vs.             :             1:CR-05-256
                            :             1:CR-05-259
                            :             1:CR-05-284
                            :             1:CR-05-285
                            :             1:CR-05-287
                            :             1:CR-05-288
                            :             1:CR-05-294
JOHN EVAN MIZIC             :             1:CR-05-296
                            :             1:CR-05-305
                            :             1:CR-05-306
                            :             1:CR-05-324
                            :             1:CR-05-367
                            :             1:CR-05-440
                            :             1:CR-05-456
```

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, this 13th day of
FEBRUARY 2007, he served a copy of the foregoing on the following
by transmitting a copy of the same to
James V. Wade, Esq.

                              S/MARTIN C. CARLSON
                              MARTIN C. CARLSON
                              Assistant U.S. Attorney
                              228 Walnut Street, Suite 220
                              Harrisburg, Pa. 17108
                              Phone: 717-221-4482
                              Fax:   717-221-4582
                              Martin.Carlson@USDOJ.gov
                              PA Bar #33396